UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

REGINALD WAYNE WHATLEY,

          Plaintiff,

    v.

THERESA CISNEROS, et al.,

          Defendants.

Case No.: 1:22-cv-00270-JLT-CDB

**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

(Doc. 39)

14-DAY OBJECTION PERIOD

Plaintiff Reginald Wayne Whatley is represented by counsel in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.    INTRODUCTION**

This action proceeds on Plaintiff's Eighth Amendment conditions of confinement claims and state law negligence claims against Defendants Allison, Baer, and Cisneros. (*See* Doc. 26.)

On July 21, 2025, Defendants Allison, Baer, and Cisneros filed a motion for partial summary judgment, contending Plaintiff failed to exhaust his administrative remedies concerning his claims against Defendant Allison. (Doc. 39.) Plaintiff opposed (Doc. 46), and Defendants replied (Doc. 53).

//

//

//

## II.   APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Albino*, 747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v.*

3

*Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C. CDCR Grievance Process

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Prior to June 2020, the grievance process involved three levels of review. Cal. Code Regs. tit. 15, §§ 3084-85. As of June 1, 2020, prisoners are required to follow a two-level review procedure. Cal. Code Regs. tit. 15, §§ 3480-3487. Compliance with 42 U.S.C. § 1997e(a) requires California-state prisoners to use CDCR's grievance process to exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86.

### III.    SUMMARY OF THE PARTIES' BRIEFING

#### *Defendants' Partial Motion for Summary Judgment (Doc. 39)*

Defendants contend that the sole grievance submitted by Plaintiff concerning the incident giving rise to his claims did not name or reference Defendant Allison in any way, and therefore Plaintiff failed to exhaust his administrative remedies concerning his conditions of confinement claim against Defendant Allison. Defendants ask the Court to grant their partial motion for summary judgment and to dismiss Allison from the action.

#### *Plaintiff's Opposition (Doc. 46)*

Plaintiff argues he exhausted his administrative remedies concerning his claim against Defendant Allison because his grievance references prison administrators and thus provided sufficient notice of his claim.

4

*Defendants' Reply (Doc. 53)*

Defendants maintain that Plaintiff failed to exhaust his administrative remedies as concerns Defendant Allison because the relevant grievance did not name Allison. Defendants contend Plaintiff's argument that his grievance placed Allison "on notice of the potential suit because a June 2019 Habeas Corpus Order directed SATF to 'cease use of the Facility *A* Dining Hall' until it is repaired" is not a reasonable basis to conclude that Plaintiff's grievance placed Defendant Allison on notice that her actions or inactions contributed to the pooling of water at SATF, leading to [Plaintiff's] alleged slip-and-fall" "on his way to the *E*-Yard Dining Hall," making it insufficient. Defendants do not dispute that Plaintiff exhausted his administrative remedies as to Cisneros and Baer, but maintain Allison is entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies as to her.

## IV.    PLAINTIFF'S FIRST AMENDED COMPLAINT

At screening, the Court summarized the factual allegations as follows:

> Plaintiff states he is a "life prisoner" and has been in CDCR custody since 2010 and housed at SATF since 2019. (Doc. 22 at 6.) Plaintiff asserts SATF was constructed in 1998 and CDCR "used one subcontractor to install all building roofs … using five part roofing method of a steel deck, permeated vapour [sic] barrier to prevent water leakage …." (*Id*. at 6-7.) The roofing system "failed entirely at SATF, E Facility, Building E-3, wherein Plaintiff was housed." (*Id*. at 7.)
>
> Plaintiff asserts his cell suffered repeated water damage from the roof leak and it damaged his personal property. (Doc. 22 at 7.) Polluted water from "animal feces, rodents, rats and bird droppings" streamed down the ceilings and walls, affecting bedding, clothing, food storage, and the floor. (*Id*.) Building E-3 "suffered consistent water damage" and "hazardous waste" was present in several areas. (*Id*.) Plaintiff contends inmate porters were often assigned to mop up the water in common areas of the building. (*Id*.) He maintains he was "involuntarily assigned to cell E3-235-Low" on the second tier "in C range where all inmates on that range were required to exit the tier from a single steel staircase upon order of staff …." (*Id*.) Plaintiff asserts he repeatedly sought ground floor accommodations due to the dangerous conditions, his limited mobility, health, and age, but was denied lower bunk status. (*Id*. at 8.)
>
> Next, Plaintiff contends that on June 4, 2019, in an action before the Kings County Superior Court, a state court judge found the "extensive water leaks, mold and mice feces" in the facility were unconstitutional and CDCR's repairs were insufficient to prevent harm to the inmates. (Doc. 22 at 8.) Plaintiff states that about six

5

months after the state court's decision, his water cascading down the walls of his cell caused his television to short and endangering him due to the threat of fire. (*Id*. at 9.) Plaintiff reported the incident; an officer indicated he would "log the loss" and admitted prison staff were "aware that C Side cells leak when it rains." (*Id*.) Plaintiff states his television was replaced "[w]ithout argument." (*Id*.)

On March 21, 2021, at about 6:30 a.m., Plaintiff alleges he fell from the metal stairs "while using prudent, reasonable and diligent care during or immediately after a rain storm." (Doc. 22 at 9.) Grabbing the safety rails as he exited the second tier, Plaintiff's right hand slipped on the wet and slippery railing, causing him to lose his footing at the top of the stairs. (*Id*.) Plaintiff states he "soared into the air landing on his back" and slid down 12 to 16 steps. (*Id*.) He was knocked unconscious for some time and awoke "in agony with CDCR Emergency Personnel responding." (*Id*.) Plaintiff was placed on a stretcher and received medical care. (*Id*. at 9-10.) Plaintiff states his injuries were extensive. (*Id*. at 10.) He is designated ADA and mobility impaired, is prohibited from lifting more than 19 pounds, has endured three years of continuing physical therapy, repeated neurological specialist referrals, examinations, diagnostics, and treatment. (*Id*.)

Plaintiff contends the named Defendants had a statutory and constitutional duty of care and were "repeatedly and openly made aware of the deprivations and unconstitutional conditions, readily admitted the inhabitable and unconstitutional conditions yet failed to correct them." (Doc. 22 at 10.) He maintains the deprivations were serious and that Defendants were deliberately indifferent by disregarding an excessive risk to his health and safety. (*Id*.) Plaintiff contends the "two year protracted period between the Court's Order of June 4, 2019, and the fall on March 15, 2021," demonstrates a "callous disregard." (*Id*.) He argues the Defendants "breached and abandoned their constitutional duty of care," directly causing his injuries. (*Id*.)

Plaintiff alleges he is "now infirm and unable to continue in [his chosen] field as a Demolition expert and Recycleable Metal Dealer wherein he earned in excess of one hundred thousand dollars a year." (Doc. 22 at 11.) He states he "can no longer pick up even the lightest of materials" after March 15, 2021. (*Id*.)

(Doc. 25 at 4-6.)

Thereafter, the Court found that, liberally construed, Plaintiff's first amended complaint "states plausible Eighth Amendment conditions of confinement claims against Defendants Cisneros, Baer, and Allison. He asserts those prison officials knowingly denied him the 'minimal civilized measures of life's necessities' by failing to provide adequate shelter and personal safety and disregarding the excessive risk presented; he contends all were aware of ongoing and long standing dangerous conditions presented and state court findings that the conditions were

6

dangerous and unconstitutional, placing inmates at serious risk of harm. *Farmer*, 511 U.S. at 837; *Johnson*, 217 F.3d at 731; *Frost*, 152 F.3d at 1129; *Keenan*, 83 F.3d at 1089; *Taylor*, 880 F.2d at 1045." (Doc. 25 at 7-8.) Concerning Plaintiff's state law negligence claim, the Court determined "Plaintiff plausibly alleges state law negligence claims against Defendants Cisneros, Baer, and Allison by asserting they had a duty of care and breached that duty, proximately causing his injuries and physical, mental, and emotional damages." (*Id*. at 8-9.)[1]

## V.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Plaintiff's operative complaint (FAC) seeks damages for injuries he allegedly sustained on March 15, 2021, due to the stairs being wet in Building E-3 at the Substance Abuse Treatment Facility (SATF), causing him to slip and fall (hereinafter "subject incident").

2. Plaintiff alleges in the FAC that Defendant K. Allison was the Director of Adult Institutions for the California Department of Corrections and Rehabilitation (CDCR) and was acting in that official capacity at all times mentioned in the complaint, including on March 15, 2021.

3. Defendant K. Allison was not the Director of Adult Institutions on March 15, 2021.

4. Defendant K. Allison was the CDCR Secretary from October 1, 2020, to December 2022. As Secretary of the CDCR, Defendant K. Allison managed a large staff statewide to ensure the functioning of CDCR in accordance with its mission, values, and goals. Defendant K. Allison did not have any role in the day-to-day operations of the institutions.

5. CDCR has a comprehensive appeals system for prisoner complaints. CDCR provides an administrative grievance process for inmate complaints in accordance with Title 15 of the California Code of Regulations. This grievance process was available to the Plaintiff following the subject incident.

---

[1] The Court also found Plaintiff failed to state a premises liability claim against Defendants, and recommended the claim be dismissed. (*Id*. at 10, 11.) On November 4, 2024, District Judge Jennifer L. Thurston dismissed the premises liability claim and ordered the action to proceed only on Plaintiff's Eighth Amendment conditions of confinement claims and state law negligence claims. (See Doc. 26.)

6. Plaintiff filed a grievance (Log No. 102296) that was received by the [Office of Grievances (OOG)] at SATF on March 26, 2021, which references the subject incident.

7. Grievance (log no. 102296) specifically identified and mentioned the Warden of SATF, Captain of E-Yard, and the maintenance supervisor and crew at SATF as being responsible for the alleged slip and fall incident and Plaintiff's injuries.

8. In his grievance, Plaintiff stated that he wanted the "Warden of This Prison, The Captain of E-yard and maintenance Supervisor and Boss of E-yard maintenance crew Held Responsible for [his] Injuries, Pain and Suffering and ALL future medical…" The grievance also stated that a State Court ordered "[t]his Prison Warden To Fix The Blatant Violations years ago…This Prison Administrator's have Brought This Legal Deluge upon Themselves…" Again, the grievance also stated "The Warden, Captain of E-Yard and maintenance Supervisor, and Boss of E-Yard maintenance-Department is Liable…" In addition to describing incident and his injuries, Plaintiff requested to be moved to the lower tier to avoid having to use the stairs.

9. There is no mention of, or reference to, Defendant K. Allison within grievance (log no. 102296) either individually or in any executive capacity.

10. On or about April 12, 2021, OOG issued a response to grievance (log no 102296) redirecting the grievance and request to the Facility Captain/Parole District Administrator. Plaintiff appealed the decision and that appeal was received by the Office of Appeal (OOA) on or about April 23, 2021.

11. In his appeal, Plaintiff noted that he addressed his concerns with the captain and his counselor to no avail and that he was "[g]oing To The Next Level of Appeal To See What Sacramento have To Say Because CDCR Office of Grievances at CSATF/STaTe Prison Facility Say They have Not assigned my Grievances For Review So with that Being Said I Will See What Sacramento have To Say Before I Go To The Court." Plaintiff again emphasized that the "Warden & Captain are [r]esponsible" for his injuries.

12. There is no mention or reference to Defendant K. Allison within the appeal of grievance (log no 102296), either individually or in any executive capacity.

13. On June 23, 2021, the OOA sent Plaintiff a response letter advising him that the sixty-calendar- day time to respond expired and that the time-expired response letter would be the only response.

14. On or about August 16, 2021, Plaintiff filed a grievance (log no. 152366) claiming that, as of August 15, 2021, E-Yard dining hall continued to experience problems with contaminated water falling from ceiling tiles. SATF's OOG provided a response on September 2, 2021.

15. There is no mention or reference to Defendant K. Allison individually or in any executive role within the grievance (log no. 152366). Additionally, this grievance was not appealed to OOA.

16. All other grievances filed by Plaintiff and received by SATF's OOG since March 15, 2021, are related to missing or unaccounted for property when Plaintiff was transferred from SATF to Mule Creek State Prison. There is no mention or reference to Defendant K. Allison, either individually or in any executive role, within any of these grievances.

(Doc. 39 at 14-18 [Ds' UDF].)

## VI.   PLAINTIFF'S RESPONSE TO DEFENDANTS' UNDISPUTED FACTS

Plaintiff responds to Defendants' statement of undisputed facts as follows:

1. Undisputed as an allegation in the FAC; immaterial as to exhaustion.

2. Undisputed that the FAC alleges as such; still immaterial as to exhaustion.

3. Undisputed as to Defendant Allison not being the Director of Adult Institutions on March 15, 2021; no concession as to materiality here.

4. Disputed in part; Undisputed that Allison served as Secretary. Disputed to the extent it asserts the Secretary "did not have any role in the day-to-day operations" as a categorical fact; objection, vague, legal conclusion, lacks foundation.

5. Undisputed that CDCR maintained a grievance system with OOG and OOA levels

during the relevant period.

6. Undisputed that Plaintiff filed grievance Log No. 102296 about the incident on March 26, 2021.

7. Disputed in part. While the grievance specifically discussed responsibility of "the warden, E-yard captain, and maintenance," it also referenced "This Prison Administrator's" and institution-wide noncompliance with a court order, fairly alerting CDCR leadership/central administration.

8. Undisputed that the grievance text includes a request to hold the Warden, Captain, and maintenance responsible; disputed to the extent Defendants imply the grievance excluded higher-level CDCR officials. The same page references "This Prison Administrator's," indicating broader involvement.

9. Disputed. The grievance and subsequent appeal reasonably alerted CDCR, including central office ("Sacramento"), to the nature of the claim and the involvement of prison administration. The appeal expressly states Plaintiff was going "to the next level … to see what Sacramento have to say."

10. Undisputed that OOG redirected to the Facility Captain/Parole District Administrator on or about April 12, 2021.

11. Undisputed that the appeal was received by OOA on or about April 23, 2021, and included the "Sacramento" reference; disputed as to any implication that Plaintiff limited responsibility solely to onsite staff in a way that precluded notice to central administration.

12. Disputed. Defendants' characterization that "nowhere in the appeal did Plaintiff allege or even suggest" involvement by the Secretary ignores the express "Sacramento" language and the grievance's "Prison Administrator's" references, which fairly notified CDCR leadership.

13. Undisputed that OOA issued a time-expired letter on June 23, 2021, constituting the only response. (Materiality disputed as framed.)

14. Disputed to the extent it asserts the first mention of Allison was only in court filings as

10

a basis to defeat exhaustion. The administrative filings provided sufficient notice of a policy-level failure implicating CDCR leadership. (See, "Prison Administrator's" and "Sacramento" references.)

15. Disputed insofar as it suggests naming the Secretary by name was required to exhaust; objection: legal conclusion. The record reflects notice to central administration.

16. Disputed to the extent it implies no administrative notice to CDCR leadership; Plaintiff's submissions reasonably alerted CDCR, including "Sacramento," to the policy/administrative nature of the hazard.

(Doc. 46 at 11-15.)[2]

## VII.    DISCUSSION

The Court determines whether Plaintiff exhausted his administrative remedies regarding his Eighth Amendment conditions of confinement claim against Defendant Allison.[3] Thus, the merits of Plaintiff's claims are not addressed. Defendants' partial summary judgment motion concerns the exhaustion of administrative remedies only as to the claims asserted against Defendant Allison. *See, e.g.*, *Williams v. Thompson*, No. 1:19-cv-00330-AWI-CDB (PC), 2023 WL 2823388 at *1 (E.D. Cal. Apr. 7, 2023) ("at this stage of the proceedings, defendants' motion for summary judgment is based on non-exhaustion of remedies and does not address the merits of his constitutional claims").

### *Did Plaintiff Exhaust His Deliberate Indifference Claim Against Allison?*

There is no dispute that an administrative grievance process was available at SATF during the relevant period. Ds' UDF 5. In dispute is whether Plaintiff failed to exhaust his administrative remedies concerning his claim against Defendant Allison because Allison is not identified in the relevant grievances. (Doc. 46 at 11-15 [disputing Ds' UDF 7-9, 11-12, 14-16].)

[2] The Court corrected the numbering or sequencing for the entries that follow Ds' UDF 12. (*Cf.* Doc. 39 at 14-18 [16 UDFs] to Doc. 46 at 11-15 [a total of 17 UDFs, but misnumbered commencing with UDF 13].)

[3] In arriving at its determination, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.

11

Grievance Log Number 102296

In section A, asked to explain his issue, Plaintiff wrote:

On March 15, 2021, I was going to breakfast. I was going down the stairs, my foot slipped out from under me. I [tried] to catch myself by trying to grab the hand rail but it was [too] late my back hit two of the iron steps, pain shot through my back and right shoulder. I sat there on the stairs until the nurses got there – the officers put me on the board and took me to medical. Lower back hurt bad, it hurt to walk up the stairs. That morning (3-15-2021) it had rained, and the upper c-side floor was wet due to the rain water from the roof – leaking every time it rain. The iron stairs was wet as well … Even the floor officers in Building E-3 tell us inmates we should not have to live like this, it's been leaking rain water in this building for years … this building should be condemn (declared unfit to live in). I'm going to write the judge in King County … (Judge Tarter) who ordered this prison warden to fix the blatant violations years ago … this prison administrators have brought this legal deluge upon themselves, it's call "human dignity" we as inmates have a right to live in and breathe clean air and not have to have rain water in our cell or building because the roof leak.

(Doc. 39 at 38, 40 [minor capitalization & punctuation changes].) In section B, asked to explain the action requested, Plaintiff wrote:

I want the warden of this prison, the captain of E-yard and maintenance supervisor and boss of E-yard maintenance crew held responsible for my injuries, pain and suffering and all future medical treatment and bills. The warden, captain of E-yard and maintenance supervisor and boss of E-yard maintenance department is liable because they knew about the roof leaking in Building E-3 for years and failed to fix the roof even after a judge ordered this prison to rectify all the living condition problems and violation (code) … They are negligent for making inmates live in inadequate conditions like the ones in Building E-3 at CSATF/state prison at Corcoran. I want to be compensated for my pain & suffering and all future medical treatment and bills even when I am released from prison…I also want to be moved to the lower tier because it hurt my back to keep going up and down them stairs, I'm afraid I may fall again…I've also ask medical (my doctor) to move me to the lower tier.

(*Id*. [same].)

Grievance Log Number 152366

In section A, asked to explain his issue, Plaintiff wrote:

As of August 15, 2021, E-hard dining hall continue to be contaminated with mold, mildew and contaminated water with bird, rat and bat feces that all into the dining hall where I consume my breakfast and dinner. This has been going on for over a year and the warden and captain of this yard (E-yard) have been aware of this

12

> health violation because a inmate on E-yard have filed a 602 and a lawsuit on this health violation and the warden or captain have not closed E-yard dining hall until the health violations is fixed…They have neglected the basic building maintenance which have put me and other inmates and staff health and safety at risk of getting sick or hurt from the ceiling tiles that fall from the ceiling. I talked to the 3rd watch sergeant and he told me to put in a 602 because they have to breathe the same mold I'm breathing. One of the officer told me to write the warden about this ongoing problem and in the dining hall on E-yard. On June 4, 2019, Judge Donna Tarter ordered Facility A dining hall to be closed and the staff to find an appropriate location and method by which to feed Facility A inmates and that is the same thing that need to happen here on E-yard. If the judge ordered it on Facility A then I'm sure she will order it here. I'm writing the judge today.

(Doc. 45, 47 [same].) In section B, asked to explain the action requested, Plaintiff wrote:

> I'm asking the warden and captain of E-yard to close E-yard dining hall until mold and ceiling is fixed before a lot of inmates and staff get sick or hurt in that unsafe dining hall. This is a health violation that the warden and captain of E-yard continue to ignore putting the inmates and staff health and safety at risk of becoming sick or hurt…This shows they don't care about their own staff and I've talk to a few staff who agree with what I'm concerned about, I will be taking my concerns to the courts because it's clear the warden and captain of E-yard don't care about the inmates or staff at this prison…We have a right to be free of misconduct by the warden and captain of E-yard. This is deliberate indifference, neglect, cruel and unusual punishment and I am going to go all the way with my 602 and if nothing is done to fix the problem I'm going to the courts…I want pictures of the ceiling and wall in E-yard dining hall now today for my record.

(*Id*. [same].)

Analysis

Here, the relevant submission is grievance log number 102296.[4] Plaintiff specifically identified the problem: a leaking roof in Facility E and wet floors and stairs in the dining area, causing him to slip and fall and to sustain injuries on March 15, 2021. (Doc. 39 at 38, 40.) He identified SATF's warden, the captain on E-yard, and maintenance supervisor specifically. (*Id*.) He also referenced a prior order by a state court requiring "blatant violations" to be repaired before stating that "prison [administrators] have brought this legal deluge upon themselves … we as inmates have a right to live in and breathe clean air and not have to have rain water in our cell

---

[4] Other grievances filed by Plaintiff during the relevant time are unrelated to his specific claims in this action and thus are not referenced herein.

13

or building because the roof leak." (*Id*. at 40.)

Neither Defendants' nor Plaintiff's proffered copy of grievance log number 102296 includes a completed section D where an inmate is asked to explain the reason he is dissatisfied with the first level response. (*See* Doc. 39 at 39 & Doc. 46 at 27.) After Plaintiff received the OOG Acknowledgment of Receipt and Closure of Grievance dated April 12, 2021, indicating his "request concerning Facilities; Adequacy of Environment has been reviewed and is outside the scope of the grievance process" and that his "request will be addressed by a Facility Captain/Parole District Administrator – Request" (*see* Doc. 39 at 42 & Doc. 46 at 30), it is clear an appeal was accepted because the record establishes Plaintiff received a response from OOA reflecting it received the claim on April 23, 2021, and indicating its "Decision: Time Expired" response as of June 23, 2021. (*See* Doc. 39 at 89 & Doc. 46 at 32.) And, in his opposition, Plaintiff declares that following receipt of the April 12, 2021, OOG response, he "sent the grievance for appeal of that decision, which is the process typically followed by inmates. (*See* Doc. 46 at 18, ¶¶ 7-8.)

Further, in his opposition to Defendants' motion, Plaintiff declares that in his "grievance and appeal, [he] identified the warden and the maintenance person and the E yard supervisor as being local staff members who [he] could readily identify as being responsible," absent knowledge of their actual names, and declares he "also stated that prison administration was responsible as well. That statement was an expression of my acknowledgement that other, higher-level, out-of-prison administration are responsible for the conditions of confinement in the state prisons, and subsequently, for my injuries, despite the fact I was unable to identify those persons by name." (Doc. 46 at 18, ¶¶ 11-12.) Additionally, Plaintiff declares that he inadvertently misidentified Defendant Allison "as the Director of Adult Facilities rather than the Secretary," stating it "had little effect on [his] intent or the result, however," because regardless of title, Allison "was a high-level prison administrator who would have been responsible for some shared or joint and several liability of some nature for her part in the failure to maintain and adequately repair the facilities …." (*Id*. at 18-19, ¶ 13.) Plaintiff declares it "has always been [his] belief and intentions that both in-prison and out-of-prison administrators and actors are at fault here and

14

should be responsible for their acts or omissions." (*Id.* at 19, ¶ 14.)

The primary purpose of grievance is to alert prison officials to a problem and facilitate its resolution, not to provide personal notice to a particular official that he may be sued. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). Although Plaintiff did not specifically identify Defendant Allison in the relevant grievance, on this record, the undersigned finds Plaintiff exhausted his administrative remedies concerning his claims against Defendant Allison. Plaintiff includes specific facts, identified specific prison officials, and sufficiently referenced prison "administration," such that the reference can be understood to include CDCR executives. Plaintiff thus alerted prison officials to his problem. *Reyes*; 810 F.3d at 659; *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009); *see, e.g.*, *Cotton v. Medina*, No. 1:22-cv-00568-JLT-EPG (PC), 2024 WL 1313045, *8 (E.D. Cal. Mar. 26, 2024) (finding reference to "the Sergeant" in a grievance "contained enough factual specificity to put the prison on notice as to the nature of the wrong for which Plaintiff now seeks redress in this Court" and recommending the defendant's summary judgment motion be denied), adopted in full, 2024 WL 1932802 (E.D. Cal. May 2, 2024); *Williams v. Romero*, No. 2:17-cv-1884 TLN DB P, 2023 WL 4551436, at *10-11 (E.D. Cal. July 14, 2023) (finding "plaintiff's references to Abarca's phone calls for medical help and statement that Abarca had 'in fact' made those calls to be sufficient to have placed the prison on notice that someone in the medical unit may be involved in plaintiff's claimed failures to provide medical care. Defendant has not demonstrated that it is an indisputable fact that plaintiff failed to exhaust his remedies against Chuksorji"), adopted in full, 2023 WL 5723746 (E.D. Cal. Sept. 5, 2023); *Ardds v. Hicks*, No. 1:18-cv-01324-JLT-BAM, 2022 WL 507427, at *12 (E.D. Cal. Feb. 18, 2022) ("the Court finds that the undisputed evidence viewed in the light most favorable to Plaintiff shows that Plaintiff exhausted his administrative remedies as to his failure to protect claim against any Defendants who may have been members of the ICC and IDTT committees" at the relevant time, notwithstanding Plaintiff did not name in his grievance any such ICC/IDTT committee member), adopted in full, 2022 WL 951173 (E.D. Cal. Mar. 30, 2022); *Eichler v. Tilton*, No. CIV S-06-2894-JAM-CMK-P, 2009 WL 188783, at *3 (E.D. Cal. Jan. 27, 2009) (discussing grievances, plaintiff's purported failure "to name [CDCR directors or secretaries] or

15

their policies," and noting the "grievance system is less about future litigation and more about reaching an internal and speedy resolution of the prisoner's problems").

Because the Court finds Plaintiff's reference to "prison [administrators]" in grievance log number 102296 coupled with references to SATF officials or employees having knowledge of the unsafe conditions— unrepaired roof leaks causing wet floors and stairs in the E-yard dining hall, resulting in Plaintiff's fall and injuries —were sufficient to place Defendant Allison on notice of Plaintiff's claim, it does not address Defendants' specific argument in reply that a state court order directing "SATF to 'cease use of the Facility *A* Dining Hall' until it is repaired" failed to place Defendant Allison on notice of Plaintiff's claim concerning events in the E-yard facility.

In sum, and viewed in the light most favorable to Plaintiff, on this record, the undersigned finds Defendants are not entitled to partial summary judgment concerning Plaintiff's claims against Defendant Allison. *See Albino*, 747 F.3d at 1166 (summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust).

### IV.    CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **HEREBY RECOMMENDS** that Defendants' partial motion for summary judgment (Doc. 39) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15-pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15- page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 17, 2026**   _____

UNITED STATES MAGISTRATE JUDGE

17